IN THE COMMONWEALTH COURT OF PENNSYLVANIA

T. Michael Haugh and Linda S. Haugh,    :
                    Petitioners              :
                                             :
            v.                               :
                                             :
Pennsylvania Liquor Control Board,       :    No. 1086 C.D. 2017
                    Respondent               :    Argued: April 10, 2018


BEFORE:    HONORABLE ANNE E. COVEY, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE JAMES GARDNER COLINS, Senior Judge


OPINION BY
JUDGE COVEY                                  FILED: April 30, 2018


            T. Michael Haugh (Haugh) and Linda S. Haugh (collectively, Objectors)
petition this Court for review of the Pennsylvania Liquor Control Board's (Board)
July 19, 2017 order approving Oxford Township's (Township)[1] municipal petition
(Petition) for an exemption from the Liquor Code's[2] amplified sound restrictions[3]

---

[1] Oxford Township is located in Adams County, Pennsylvania.

[2] Act of April 12, 1951, P.L. 90, *as amended*, 47 P.S. §§ 1-101 – 10-1001.

[3] Section 493(34) of the Liquor Code, 47 P.S. § 4-493(34), imposes restrictions on amplified
music at liquor-licensed premises. It provides:

> Notwithstanding any law or regulation to the contrary, a licensee may
> not use or permit to be used inside or outside of the licensed premises
> a loudspeaker or similar device whereby the sound of music or other
> entertainment, or the advertisement thereof, can be heard beyond the
> licensee's property line; however, any licensee that is located in an
> area which is subject to an exemption from the [B]oard's regulation
> regarding amplified music being heard off the licensed premises shall
> be exempt from compliance with this paragraph until the expiration of
> the [B]oard's order granting the exemption. . . .

47 P.S. § 4-493(34).

(Amplified Sound Restrictions) pursuant to Section 493.1(b) of the Liquor Code.[4] Objectors present three issues for this Court's review: (1) whether the Board erred and/or abused its discretion by approving the Petition where the Township's noise ordinance contains a less stringent standard than the Liquor Code; (2) whether record evidence reflected an adverse effect on the welfare, health, peace and morals of residents in the licensed establishment's vicinity, thereby requiring the Board to deny the Petition; and, (3) whether the Board erred by granting the Petition given the impact on Objectors, who are residents of a different municipality than that of the licensed premises.  After review, we affirm.

---

[4] Added by Section 8 of the Act of October 5, 1994, P.L. 522, 47 P.S. § 4–493.1(b).  Section 493.1(b) of the Liquor Code states:

> A municipality may file a petition with the [B]oard for an exemption from [S]ection 493(34) of [the Liquor Code] for all the licensees within an identifiable area in the municipality.  Prior to submitting a petition, the municipality shall adopt a local noise ordinance and a resolution adopted by its governing body confirming support of the petition, citing the noise ordinance and its intention to enforce the ordinance in place of [S]ection 493(34) of [the Liquor Code].  Upon receipt of a petition, including a copy of the noise ordinance, a map of the area to be exempted and resolution, the [B]oard shall hold at least one (1) public hearing on the petition.  The hearing may be held before a hearing examiner. . . .  Within sixty (60) days after receipt of the petition, **the [B]oard shall disapprove the petition for an exemption in its entirety or may approve an area more limited for which the exemption will be granted** *if the* [*B*]*oard finds that granting the petition shall have an adverse effect on the welfare, health, peace and morals of the residents living in the vicinity of the identified area;* **otherwise, the [B]oard shall approve the petition.**  The [B]oard may place additional conditions on its approval such as limiting the duration of the approval and any other condition the [B]oard deems appropriate.  There shall be a right to appeal to the court of common pleas in the same manner as provided by this act for appeals from refusals to grant licenses.

47 P.S. § 4-493.1(b) (bold, italic and underline emphasis added).

2

On April 18, 2017, the Township's Board of Supervisors approved Resolution 2017-9 (the Resolution), authorizing the Township to petition the Board for an exemption from the Amplified Sound Restrictions for the liquor-licensed premises located at 4797 York Road, New Oxford, Pennsylvania (Premises), operated as Scozzaro's Old Mill Inn (Licensee), from July 20, 2017 to July 20, 2022.[5] The Resolution referenced the Township's intention to enforce existing Township Ordinance No. 2005-42 (Ordinance), which prohibits noise nuisances within the Township and authorizes designated Township representatives, including Township police officers, to order noise nuisances abated. *See* Original Record (O.R.) Item 1, Exhibit P3; Reproduced Record (R.R.) at 177a-179a. Thereafter, the Township filed the Petition with the Board for the aforementioned exception.

A Board hearing examiner (Hearing Examiner) held a hearing on the Petition on June 13, 2017, at which Licensee's president, Carl Scozzaro (Scozzaro), testified in support of the Petition. Francis Staab, chief of police (Chief Staab) for the Eastern Adams Regional Police Department (Police Department) and Edward Strevig, acting Township code enforcement and zoning officer (Code Officer Strevig),[6] also appeared as witnesses. In addition, the Township presented the testimony of Township Board of Supervisors chairman Mario Iocco (Chairman Iocco). Haugh and Daniel Sharrer (Sharrer), another neighboring property owner, testified in opposition to the Petition.

On July 19, 2017, the Board granted the Petition for a five-year period, beginning July 20, 2017 and ending on July 20, 2022. Based on the evidence presented at the hearing, the Board concluded that "[t]he record fails to show that

---

[5] The Board had previously approved the Township's Amplified Sound Restrictions exemption petitions at the Premises for the periods December 16, 2009 to January 1, 2012, June 19, 2013 to June 19, 2016, and July 20, 2016 to July 20, 2017.

[6] Code Officer Strevig was sworn in two to three months before the Board hearing, after the previous code enforcement officer's death.

approval of [the Township's] [P]etition for a period of five years would have an adverse effect on the welfare, health, peace, and morals of the residents in the vicinity of the proposed exempted area." R.R. at 204a, Conclusions of Law ¶ 4. On August 7, 2017, Objectors appealed to this Court.[7]

Objectors first argue that the Board erred and abused its discretion when it approved the Petition because the Township's Ordinance contains a subjective nuisance standard and is less restrictive than the Liquor Code's Amplified Sound Restrictions.[8] Specifically, Objectors contend:

---

[7] The Pennsylvania Supreme Court has explained:

> An appellate court's standard of review over an appeal from an agency requires it to affirm the administrative adjudication unless it finds that an error of law was committed, that constitutional rights were violated, that a practice or procedure of a Commonwealth agency was not followed, or that any necessary finding of fact is not supported by substantial evidence of record. The 'error of law' component of the applicable standard of review may include an issue of statutory construction, over which our review is plenary[.] Moreover, we can consider whether the agency's determination represents an abuse of discretion.

*Malt Beverages Distribs. Ass'n v. Pa. Liquor Control Bd.*, 8 A.3d 885, 892 (Pa. 2010) (citations omitted).

[8] Section 10-801 of the Ordinance defines "nuisance," in relevant part, as:

> [A]ny use of property, or conduct, or activity, or condition upon property within [the] Township which shall cause a result in noise creating annoyance or discomfort beyond the boundaries of such property which disturbs a reasonable person of normal sensitivities, taking into consideration the location of the use or condition and the nature and condition of the surround neighborhood. Specifically, the word nuisance shall include but shall not be limited to the following:
>
> > A. Operating or permitting the operation of or playing of radios, television sets, amplifiers, musical instruments and other sound devices which produces or amplifies sound which annoys a reasonable person of normal sensitivities.

Ordinance, § 10-801, R.R. at 177a.

Section 10-802 of the Ordinance states: "It shall be unlawful for any person to create, continue, cause, maintain or permit to exist any noise nuisance within [the] Township." Ordinance,

4

> The Township's Ordinance employs a subjective 'nuisance' standard, where a 'nuisance' is defined as 'any use of property, or conduct, or activity, or condition upon property' which causes noise 'creating annoyance or discomfort *beyond the boundaries of such property* which disturbs a reasonable person of normal sensitivities.' (R.[R. at] 177a) (emphasis added). By its very terms, the Ordinance expressly *permits* sound 'beyond the boundaries of such property[.]' [*Id.*] In other words, the [e]xemption serves to replace a statute that provides that no amplified sound may leave a licensed premises with an Ordinance that expressly allows sound to leave the premises.

Objectors' Br. at 12.

Notwithstanding Objectors' concerns, "replace[ment]" of the Liquor Code's Amplified Sound Restrictions is explicitly contemplated and permitted by Section 493.1(b) of the Liquor Code which allows a municipality to request an area be exempted from the Amplified Sound Restrictions so long as the municipality has adopted a noise ordinance and intends to enforce it. Objectors' Br. at 12; *see* 47 P.S. § 4-493.1(b).

Further, Objectors contend that the Ordinance impermissibly eliminates the Liquor Code's bright-line rule and "injects a highly **subjective** standard requiring such sound to 'disturb[] a reasonable person of normal sensitivities' before it is actionable under the Ordinance." Objectors' Br. at 12 (emphasis added). This Court

---

§ 10-802, R.R. at 178a. Further, Section 10-804 of the Ordinance, which addresses the "Removal or Abatement of Noise and Enforcements[,]" provides:

> Any person who shall create, continue, cause, maintain or permit to exist any noise nuisance at any place within [the] Township shall after order from the Board of Supervisors or a designated representative, including Township police officers, remove or abate such nuisance. If such person shall fail, neglect, or refuse to abate such nuisance ordered, the Board of Supervisors shall have the authority in person or by its agents and or employees to sight such person for a violation of this Part and or to remove or abate such nuisance.

Ordinance, § 10-804, R.R. at 178a.

5

has held that "the phrase 'annoy or disturb a reasonable person of normal sensitivities' in [a] [t]ownship's ordinance is an **objective standard** that looks to the impact of noise upon a reasonable person under the particular circumstances of the incident." *Commonwealth v. Ebaugh*, 783 A.2d 846, 850 (Pa. Cmwlth. 2001) (emphasis added). In *Ebaugh*, this Court recognized that similarly-worded noise ordinances in various municipalities had been found by Pennsylvania Courts **not** to be unconstitutionally vague. *Id*. (citing to *City of Phila. v. Cohen*, 479 A.2d 32 (Pa. Cmwlth. 1984); *Commonwealth v. Solon*, 13 Pa. D. & C.3d 85 (1979); and *Commonwealth v. Cromartie*, 65 Pa. D. & C.2d 541 (1973)). While the Ordinance may impose a noise restriction that is less favorable to Objectors than the Liquor Code's Amplified Sound Restrictions, the Ordinance does not impermissibly "inject[] a highly subjective standard . . . ." Objectors' Br. at 12.

Objectors also assert that the phrase, "in place of [S]ection 493(34) of [the Liquor Code,]" as used in Section 493.1(b) of the Liquor Code, should be interpreted to require "an identical or substantially similar protection as afforded in [Section 493(34) of] the [Liquor] Code." Objectors' Br. at 15. Objectors urge this Court that such an interpretation of Section 493.1(b) of the Liquor Code is consistent with the Liquor Code's stated purpose of protecting "the public welfare, health, peace and morals" of the Commonwealth's residents.[9] 47 P.S. § 1-104(a). This Court declines to do so.

The Pennsylvania Supreme Court has expressly held that "where the language of a statute is clear and unambiguous, a court may not add matters the legislature saw fit not to include under the guise of construction." *Mohamed v. Dep't of Transp., Bureau of Motor Vehicles*, 40 A.3d 1186, 1194-95 (Pa. 2012). Nothing in

---

[9] *See*, *e.g.*, *St. Rd. Bar & Grille, Inc. v. Pa. Liquor Control Bd.*, 876 A.2d 346 (Pa. 2005); *First Ward Republican Club of Phila. v. Pa. Liquor Control Bd.*, 11 A.3d 38 (Pa. Cmwlth. 2010); *Hyland Enter. Inc. v. Pa. Liquor Control Bd.*, 631 A.2d 789 (Pa. Cmwlth. 1993).

the Liquor Code (including Section 493.1(b) of the Liquor Code) requires that a municipality's noise ordinance be as restrictive as the Amplified Sound Restrictions in Section 493(34) of the Liquor Code.  Rather, Section 493.1(b) of the Liquor Code requires that the Board refuse a municipality's petition only if it finds "that granting the petition shall have an adverse effect on the welfare, health, peace and morals of the residents living in the vicinity of the identified area[.]"[10]  47 P.S. § 4-493.1(b).

Although Objectors may disagree with the specific standard chosen by the Township,[11] the Ordinance is not vague, subjective or unenforceable, and the fact that it is less restrictive than the Liquor Code's Amplified Sound Restrictions does not render it inadequate to satisfy Section 493.1(b) of the Liquor Code.  Nor does the Board's Petition approval constitute an error of law.  Thus, Objectors' argument fails.

Objectors next argue that the Board abused its discretion when it approved the Petition because "[t]here is ample record evidence . . . demonstrating that granting the Petition has, and will continue to have, 'an adverse effect on the welfare, health, peace and morals of the residents living in the vicinity of the identified area[.]'"  Objectors' Br. at 18 (quoting Section 493.1(b) of the Liquor Code).[12]  This Court has explained that "[a]n abuse of discretion is not merely an error in judgment.  Rather, discretion is abused where the law is overridden or misapplied, or the judgment exercised is clearly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence or the record."

---

[10] Importantly, Section 493.1(b) of the Liquor Code **requires** the Board to **approve** the Petition absent an adverse effect.

[11] The Township's Ordinance contemplates that **some** amplified sound coming from a licensed premises is acceptable, so long as it would not disturb a reasonable person of normal sensitivities.

[12] The Ordinance prohibits noise which "disturbs a reasonable person of normal sensitivities."  Ordinance, § 10-801, R.R. at 177a.  Notably, Objectors appear to argue that **any** effect from the Petition approval is equivalent to an **adverse** effect.  In essence, the Objectors contend that the Ordinance's failure to protect "a[n] [un]reasonable person of [ab]normal sensitivities" **adversely effects** them.  *Id.*

*Bensalem Racing Ass'n v. Pa. State Harness Racing Comm'n*, 19 A.3d 549, 554 (Pa. Cmwlth. 2011) (citation omitted). Here, the Board concluded that granting the Petition would **not** adversely affect the health, welfare, peace and morals of the residents living in the vicinity of the Premises. Accordingly, this Court will review the Board's decision to determine whether the Board's judgment was "clearly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence or the record." *Id.*

In reaching its decision on the Petition, the Board considered testimony regarding the operations at the Premises:

> According to [] Scozzaro, Licensee's deck is open a few weeks before Memorial Day until a few weeks after Labor Day, depending on weather. The entertainment consists primarily of jukebox music, which is not played outdoors after 11:00 p.m. Every other Thursday evening, Licensee hires musical entertainment in the form [of] a disc jockey for music trivia which ends at 10:00 p.m. On Fridays, Licensee has hired amplified acoustic musicians to play from 7:00 p.m. until 10:00 p.m. Additionally, Licensee has a one-day charity wine festival in July every year. The event ends at 7:00 p.m. Otherwise, Licensee's policy is to cease outdoor entertainment and close the deck at 11:00 p.m. [] Scozzaro testified he was aware of the concerns of [] Haugh and [] Sharrer, but only based on their testimony during last year's hearing for Licensee's 2016-2017 noise exemption petition. [] Sharrer was not aware of any complaints from any other neighbors in the area.

R.R. at 200a-201a.

The Board also credited Chief Staab's testimony, concluding that the Police Department had the authority and the intention to enforce the Ordinance. *See* R.R. at 202a-203a, 38a, 41a. It further accepted Chief Staab's statements that the Police Department had not received any noise complaints pertaining to Licensee

8

since approximately one year prior to the hearing.[13]  *See* R.R. at 202a, 36a.  The Board also considered Code Officer Strevig's testimony that he is charged with enforcing the Ordinance and investigating noise complaints and intended to continue to do so.  *See* R.R. at 202a, 45a, 50a, 57a-58a.  The Board further relied on Chairman Iocco's testimony that the Board of Supervisors was sensitive to the Ordinance, and that both the Police Department and Code Officer Strevig were authorized to enforce it.[14]  *See* R.R. at 202a, 63a-64a, 65a, 66a-67a.  Chairman Iocco explained that a 110-unit townhome community was being constructed on property approximately 1,000 feet from the Premises.

Objectors contend, given Haugh's and Sharrer's testimony, that the Board acted unreasonably when it concluded that the Petition approval would not adversely affect nearby residents.  Haugh testified that his home is located on property adjacent to and across the Conewago Creek from the Premises, in Mount Pleasant Township.  Haugh represented that he contacted the Police Department three or four times during the summer of 2015 and, on one occasion, his complaint was never forwarded to the  Police Department.  *See* R.R. at 77a.  On two other occasions, the Police Department responded to the Premises and thereafter informed Haugh that they did not believe that a reasonable person would be disturbed by the sound.

_____

[13] Chief Staab acknowledged that the Police Department received "one or two complaints" from extra-Township residents living up the hill from the Premises.  R.R. at 37a.  However, those complaints were received more than one year before the hearing.  Chief Staab testified that the Police Department investigated the complaints, but found that the noise was not loud enough to require abatement.  *See id.*

[14] Chairman Iocco explained that he is also a Police Department commission member.  *See* R.R. at 61a.  He stated that Code Officer Strevig is a duly-appointed Township representative who has the power to abate all nuisances in accordance with the Township's ordinances.  *See* R.R. at 63a.  According to Chairman Iocco, Code Officer Strevig carries a citation book, is authorized and has complete discretion to issue citations without the Board of Supervisors' approval.  *See* R.R. at 63a-64a.  Chairman Iocco explained that the Police Department also has full authority to enforce all Township ordinances, including issuing on-the-spot citations for Ordinance violations.  *See* R.R. at 66a-67a.

9

Haugh asked the police to come to his home, but they refused because it was not within their Township jurisdiction. Haugh testified that he took no further action thereafter to report amplified sound incidents at the Premises. *See* R.R. at 77a-78a. After Haugh attended a Board of Supervisors meeting in the summer of 2015 and expressed his concerns but received no response, he did not attend any additional meetings. *See* R.R. at 79a-80a. Haugh further explained:

> [M]y wife, my neighbors that are here, we are affected. Our peace is affected. Period.
>
> I mean, we get amplified sound. . . . But they said we have a jukebox seven days a week, I guess all year round . . . until eleven o'clock. I mean, I'm 68 years old. I don't want music at eleven o'clock at night. [Licensee has Thursday night trivia] that's by a DJ that not only has amplified sound, but [Licensee] has music in between it. And then I heard Friday there's acoustic entertainment. . . . [T]hen the public events that [Licensee has], which I'll get to here in a minute. . . .
>
> I mean, we spent thousands of dollars on our property. We have 12 acres of lawn and gardens and patios and **it's just unacceptable for me to hear anything let alone the sensitivity of a normal person. It's just unacceptable to hear anything.**
>
> The [Board] has a great law that is very clear that says --- . . . there is no amplified sound leaves a licensed property. Why would this Township even want this rule? **And why would the** [**Board**] **allow them** --- **allow anybody to have sound leave their property? It just unacceptable.**
>
> . . . .
>
> I mean, who knows what's going to happen with 150 residents [living in the new townhome community]. I don't even know what --- who's going to live there. A hundred and some units. It just doesn't make any sense to me.
>
> . . . . I live sort of on a hill across the way here. And . . . sound just travels up that hill. . . . I mean, I have a certain

typography here that just is different than the person living on the other side of this house . . . .

I enjoy music. But I want to control it. We, my wife, and myself haven't had an event on our property on a Friday or Saturday night in years because we have no idea whether we're going to be interrupted or not. We used to entertain a fair amount. We should entertain. We have guests that --- just friends or even family come to our house. We don't know what's going to happen in a given day.

. . . . [W]e've been through this and we're supposed to be the ones to continue to monitor this thing. I mean it --- it keeps putting back on us. Did you call the police? Did you do this? Do --- **I don't want to call the freaking police. I mean, it's just** --- **it's not my job. It's the** [**Board's**] **job to have their rule** --- **which was a great rule and very succinct rule** --- **that says that no amplified sound leaves a property.**

**And they gave this to this Township**[,] . . . they just don't follow through with anything, you know, that I have complained to. I went to their Board meeting. Their police sat down here in this parking lot and listened to the music. And it was probably ten o'clock at night because we wouldn't have called at 8:00 or so. . . . But it just doesn't make any sense to me.

R.R. at 81a-84a (emphasis added).

Haugh also played a video he purportedly recorded on his cell phone from Objectors' back patio approximately 500 feet from the Premises on July 16, 2016 at approximately 4:00 p.m., when Licensee was hosting an annual wine event. On the video Haugh's wife, Linda S. Haugh, states that she was "[t]rying to enjoy a quiet afternoon at home." R.R. at 100a. According to the record, rock music could be heard playing in the background at a volume the Hearing Examiner described as lower than that of Linda S. Haugh's voice. *See* R.R. at 101a-102a. Notably, Haugh admitted that he did not report the noise to the Police Department or to anyone else.[15]

_____

[15] The Township's prior Amplified Sound Restrictions exemption expired on June 19, 2016 and, therefore, Section 493(34) of the Liquor Code applied to the Premises until the new exemption

Sharrer testified that he opposed the Petition because he "just want[s] a little peace and quiet . . . ." R.R. at 111a. When asked by the Hearing Examiner whether he had been disturbed by amplified entertainment coming from the Premises, Sharrer answered, "[y]es, I can hear it." R.R. at 112a. He stated that he had only once complained about the noise to the Pennsylvania State Police during the summer of 2015, at which time a state trooper came to his driveway and stopped, but did not come into his home. *See* R.R. at 114a. Sharrer admitted that he made no further complaints about amplified sound from the Premises. Sharrer also acknowledged that he had last heard amplified sound from the Premises only once during the months prior to the hearing. *See* R.R. at 116a. When asked by the Hearing Examiner whether he was "disturbed[, by the amplified sound] or . . . just heard it[,]" Sharrer responded, "[j]ust heard it." R.R. at 116a. Sharrer explained that the amplified sound from the Premises is louder at Objectors' house, and when the music was loud enough, he could feel the vibration from the bass at Objectors' home. *See* R.R. at 117a. However, Sharrer admitted that the last time he felt the vibration from the music while at Objectors' property was approximately two years before the hearing. *See* R.R. at 117a-118a.

The Township's witnesses testified that the Police Department and Code Officer Strevig were authorized to enforce the Ordinance, that the Police Department had previously done so, and both intended to continue enforcement in the future.

took effect on July 20, 2016. Thus, when the recording was purportedly made on July 16, 2016, the Pennsylvania State Police, Bureau of Liquor Control Enforcement could have investigated a reported violation of the Liquor Code's Amplified Sound Restrictions at the Premises. Importantly, neither the Liquor Code nor the Ordinance absolutely guaranty that amplified sound from a licensed premises will not disturb a neighboring resident. Rather, both the Liquor Code and the Ordinance contain restrictions and authorize consequences if the restrictions are violated. Therefore, even the Liquor Code's Amplified Sound Restrictions do not, themselves, prevent Licensee from playing amplified music or protect Objectors from hearing it, as evidenced by the alleged July 16, 2016 recording. Notwithstanding, Objectors failed to notify law enforcement so that the appropriate consequences could be imposed.

Chief Staab described the few prior complaints and the Police Department's response. Objectors admitted that they have not contacted the Police Department, Licensee, Code Officer Strevig, or anyone else during the last exemption period to report amplified sound from the Premises.[16] Despite presenting a video recording of amplified sound emanating therefrom during a July 16, 2016 wine event, Haugh admitted that he did not contact Township officials to report his concerns.[17] Sharrer's testimony revealed that although Sharrer had heard music from the Premises on occasion, he complained only once, and, when asked, he declined to testify that music from the Premises disturbed him. The Board determined that, given the Township's willingness to enforce the Ordinance, its prior history in doing so, and the lack of complaints regarding Licensee's conduct, granting the Petition would have no adverse effect on nearby residents. Based on a review of the record evidence, this Court concludes the Board's decision was not "clearly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence or the record." [18] *Bensalem Racing Ass'n*, 19 A.3d at 554.

Finally, Objectors assert that the Board erred by approving the Petition given the record testimony describing the impact on Objectors, who are residents of a different municipality than that of the Premises. Specifically, Objectors contend that because the Pennsylvania State Police, Bureau of Liquor Control Enforcement would

---

[16] Certainly, those responsible for enforcing the applicable restrictions can best do so when they are made aware of alleged violations.

[17] Further, the amplified sound in the video occurred during the day, and was not louder than Linda S. Haugh's speaking voice.

[18] Nor is this Court persuaded by Objectors' argument that the Board should have denied the Petition based on the possible impact the Premises' amplified music will have on the new townhome community. This Court has held that witness testimony speculating about future harm that may result is insufficient to support a conclusion of adverse effect therefrom. *See SSEN, Inc. v. Borough Council of Eddystone*, 810 A.2d 200 (Pa. Cmwlth. 2002). Moreover, if townhome residents hear amplified sound from the Premises that would disturb a reasonable person of normal sensitivities, the Police Department and Code Officer Strevig are authorized to abate it, and they have assured the Board they would do so.

ordinarily enforce the Liquor Code's Amplified Sound Restrictions but will not enforce the Ordinance, Objectors will be forced to rely on local police to address noise disturbances, and local enforcement will be impaired by the fact that Licensee and Objectors are served by different police departments.

Importantly, at the Board hearing, Chief Staab explained that each officer in the Police Department is authorized to enforce the Ordinance in the officer's discretion, and that where an alleged nuisance is within the Police Department's jurisdiction, the Police Department will respond, regardless of where the complainant is located. *See* R.R. at 40a. In fact, the Police Department investigated noise complaints on two occasions as referenced in Chief Staab's testimony. Chairman Iocco similarly confirmed that a complaint reported by a non-Township resident pertaining to property within the Township would be treated the same way as a complaint received from a Township resident. *See* R.R. at 69a. Based on the record evidence, the Board could reasonably conclude that the Township intends to enforce its Ordinance regardless of whether complaints are made from within or outside the Township. Accordingly, Objectors' argument is without merit.

For all of the above reasons, the Board's order is affirmed.


_____
ANNE E. COVEY, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

T. Michael Haugh and Linda S. Haugh,   :
                      Petitioners    :
                                      :
           v.                            :
                                      :
Pennsylvania Liquor Control Board,   :     No. 1086 C.D. 2017
                    Respondent   :

## O R D E R

AND NOW, this 30th day of April, 2018, the Pennsylvania Liquor Control Board's July 19, 2017 order is affirmed.

_____
ANNE E. COVEY, Judge