# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

John Kerr Musgrave, IV,       :
           Petitioner      :
                         :
      v.                  :    No. 1679 C.D. 2017
                         :    Submitted: May 4, 2018
Pennsylvania Liquor Control Board,    :
           Respondent    :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
                 HONORABLE ROBERT SIMPSON, Judge
                 HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE SIMPSON**             **FILED: October 11, 2018**

John Kerr Musgrave, IV (Musgrave), representing himself, petitions for review of an order of the Pennsylvania Liquor Control Board (Board) granting D & V Restaurant, LLC's (Licensee) application for extension of its licensed premises to include a rooftop deck and sidewalk café. The Board determined Musgrave, an owner/landlord of neighboring residential and commercial rental properties, lacked standing to intervene in the Board proceeding because he failed to provide sufficient evidence that he would be directly aggrieved by the grant of Licensee's application. Musgrave contends the Board erred in concluding that he would not be directly aggrieved by the grant of Licensee's application. Musgrave further asserts the Board erred in deciding that its grant of Licensee's extension application would not violate Section 904.02A of the City of Pittsburgh's (City) Zoning Code (Zoning Code), relating to the goal of preserving the quality of residential life in the City's Local Neighborhood Commercial (LNC) Districts. Upon review, we affirm.

## I. Background

In February 2017, Licensee, doing business in the City's Shadyside neighborhood as Urban Tap, filed an application to amend its restaurant liquor license for an extension of its premises located at 216 South Highland Avenue. Licensee sought the extension for a rooftop deck and a sidewalk café.

In March 2017, Musgrave petitioned to intervene in Licensee's application. Pursuant to Section 464 of the Liquor Code,[1] the Board's Bureau of Licensing (Licensing Bureau) informed Licensee that a hearing would be held in July 2017 for the purpose of taking legally admissible evidence concerning the following issues:

> 1. The currently licensed premises is located within 200 feet of other establishments licensed by this Board.
>
> 2. The Board shall take evidence to determine that the approval of this application will not adversely affect the health, welfare, peace[,] and morals of the neighborhood within a radius of 500 feet of the proposed licensed areas.
>
> 3. The Board shall take evidence to determine if [Musgrave] would be directly aggrieved by the granting of this application, which would qualify him as an intervenor in this matter.

Certified Record (C.R.), Item #11 (Board Op., 9/27/17, Finding of Fact (F.F.) No. 3).

---

[1] Act of April 12, 1951, P.L. 90, as amended, 47 P.S. §4-464.

Following the hearing, the Board issued an order in September 2017 approving Licensee's application for the extension and denying Musgrave standing as an intervenor. In its decision, the Board found the following facts.

There are two licensed establishments located within 200 feet of Licensee's proposed extension premises. F.F. No. 5. Highland Mex, LLP, doing business as Mad Mex (Mad Mex), abuts Licensee's premises. Id. El Grande, Inc., doing business as Casbah (Casbah) is located approximately 70 feet across the street from Licensee's proposed extension premises. Id. Licensee's proposed extension brings it five feet closer to Casbah. F.F. No. 6. Neither Mad Mex nor Casbah filed a protest to Licensee's extension application. F.F. No. 7.

The proposed extension consists in part of a sidewalk café. F.F. No. 8. The City granted Licensee a permit for the proposed extension. Id. The sidewalk café includes an outdoor serving area of about 132 feet by 4 feet, 6½ inches. F.F. No. 9. The rooftop deck includes a serving area of about 35 feet by 75 feet. Id.

The area within a radius of 500 feet of the proposed extension premises is 75 percent commercial and 25 percent residential. F.F. No. 10. The businesses located there include a Supercuts (barbershop), a fitness club, a pizza shop and a vape shop. Id. There are apartments located above some of the shops. Id.

Licensee's record owners include its Board-approved manager, John Demauro (Manager) (70% ownership) and Frank Veltri, II (30% ownership). F.F. No. 11. Manager testified Licensee's hours of operation are 11:00 a.m. to 12:00 a.m.

on Monday through Thursday, 11:00 a.m. to 2:00 a.m. on Friday and Saturday, and 10:00 a.m. to 11:00 p.m. on Sunday. F.F. No. 13. He indicated that Licensee's sales are comprised of approximately 60% food and 40% alcohol. F.F. No. 14. During its eight months of doing business as Urban Tap, Licensee did not have any negative interactions with the City or its neighbors, and it did not receive any Board citations. F.F. No. 15.

Manager acknowledged that Licensee holds an amusement permit. F.F. No. 16. However, Manager indicated Licensee did not provide entertainment at that time. Id. Further, Manager did not know whether Licensee would provide entertainment in the future. Id. In any event, Manager continued, Licensee would comply with the Board's amplified music regulations. Id.

Manager further testified the rooftop deck area would be located about 20 feet from the front of Licensee's building. F.F. No. 17. Licensee plans to build a wall between its rooftop and the rooftop of its next-door neighbor, Mad Mex. Id. Manager believes Licensee's extension will have a positive impact on the community. Id.

Musgrave testified he owned the building located at 224 South Highland Avenue since 2006. F.F. No. 21. His building has seven residential units and three commercial units. Id. Musgrave does not reside within 500 feet of Licensee's premises. F.F. No. 22.

4

Musgrave's three commercial units are located along the sidewalk on the first floor of 224 South Highland. F.F. No. 23. The second floor houses four residential units. Id. The third floor houses two residential units. Id. An additional residential unit is located in the rear of the first floor. Id. As of the date of the hearing, Musgrave had only one commercial tenant, a women's clothing store, which normally closes at 5:00 p.m. F.F. No. 24.

Musgrave's concerns lie mainly with his residential tenants. F.F. No. 25. At the time of the hearing, three of the seven residential units were occupied. Id. Musgrave described his tenants as mostly single people without children. Id. Musgrave admitted he did not talk to any of his tenants about Licensee's extension application. F.F. No. 26. Musgrave further acknowledged that Apartment No. 3 is the only apartment on the second floor facing the proposed licensed rooftop deck area. F.F. No. 27. Although Apartment No. 3 is rented, the tenant did not attend the Board hearing. Id.

Nevertheless, Musgrave expressed his concern that noise from the rooftop deck would enter the windows of his residential tenants and make it difficult for those tenants to sleep and study. F.F. No. 28. In addition, Musgrave indicated that Licensee has an amusement permit allowing it to provide live entertainment until 2:00 a.m. Id.

Essentially, Musgrave feared his tenants would move out and he would be unable to rent those units because of the noise coming from the rooftop deck. Id. To that end, Musgrave expressed concern that noise from the rooftop deck would

5

rebound off the wall of the building adjacent to Licensee's building and bounce back toward 224 South Highland. F.F. No. 30. In particular, Musgrave testified that the bedroom window for Apartment No. 3 is only 67 feet from the edge of Licensee's proposed rooftop deck. F.F. No. 31. Apartment No. 3's kitchen window is only 64 feet from the edge of the proposed rooftop deck. Id.

The Board first addressed the Licensing Bureau's objection concerning the location of the proposed extended premises being within 200 feet of Mad Mex and Casbah. Section 404 of the Liquor Code provides the Board with discretion to refuse a license extension application if the extension is located within 200 feet of another Board-licensed establishment or within 300 feet of a restrictive institution such as a church, school, hospital, public playground or charitable institution. 47 P.S. §4-404. However, the Board's discretion in this area is not dependent upon whether the other licensed establishments protested the application. Home Aid Ass'n of John C. Tressler Post 3504 of Veterans of Foreign Wars v. Pa. Liquor Control Bd., 360 A.2d 834 (Pa. Cmwlth. 1976).

The Board recognized that Licensee's proposed extension would be within 200 feet of Mad Mex and Casbah. Nevertheless, neither Mad Mex nor Casbah protested Licensee's extension application. Further, the record contained no evidence indicating that the proposed extension would adversely affect either of these establishments in any way. Therefore, the Board found no compelling reason to deny the extension application based on its proximity to Mad Mex and Casbah. Bd. Op. at 11-12.

6

The Licensing Bureau's second objection concerned whether the approval of Licensee's extension application would adversely affect the neighborhood within a radius of 500 feet of the proposed licensed premises. Pursuant to Section 404 of the Liquor Code, the Board must deny an application if it determines the grant of the application would be detrimental to the health, welfare, peace, and morals of the residents within 500 feet of the licensed premises. 47 P.S. §4-404. Because an establishment with a liquor license is not presumed to be detrimental to a community's welfare, the Board may consider denying an application only where the nature of the neighborhood and nature of the proposed licensed premises are such that an approval of the license would be detrimental to the nearby residents. K & K Enters. Inc. v. Pa. Liquor Control Bd., 602 A.2d 476 (Pa. Cmwlth. 1992). To that end, a perceived threat to an area is not a sufficient cause to deny the application. Arrington v. Pa. Liquor Control Bd., 667 A.2d 439 (Pa. Cmwlth. 1995); K & K Enters.

The Board noted that the neighborhood within a 500-foot radius of the proposed extension is 75% commercial and 25% residential. Manager testified that Licensee had been in operation for eight months and received no Board citations. Moreover, Licensee had no negative interactions with the neighborhood or the City. Consequently, the Board determined that granting Licensee's extension application would not harm the nearby neighborhood community. Bd. Op. at 15.

The Licensing Bureau's third objection concerned whether Musgrave would be directly aggrieved by the approval of Licensee's extension application. Pursuant to Board regulations, when a licensee files an application for an extension

of the licensed premises, a protest may be filed by a resident of the neighborhood located within a 500-foot radius of the proposed extension. 40 Pa. Code §17.11(a)(3). However, only valid protests render the protestant a party to the proceeding. 40 Pa. Code §17.11(e). Otherwise, the party must file a petition to intervene. Id. Here, Musgrave does not live within a 500-foot radius of Licensee's premises. Consequently, he filed a petition to intervene.

A person who can demonstrate a direct interest in an extension application, and who can further demonstrate that a Board decision contrary to his direct interest will cause him to be aggrieved, may file a petition to intervene. 40 Pa. Code §17.12(a). The Board has the discretion to grant or deny the petition, in whole or in part. 40 Pa. Code §17.12(b). In rendering its decision the Board will consider whether the person has a direct interest in the proceeding and will be aggrieved by a decision contrary to that interest. Id.

In short, in order to be aggrieved, a person must have a direct and substantial interest in the adjudication. Burns v. Rebels, Inc., 779 A.2d 1245 (Pa. Cmwlth. 2001). Further, the person must establish a sufficiently close causal relationship between the decision and his asserted injury to qualify his interest as immediate rather than a remote consequence. Id. A person who is not adversely affected in any manner by the application he seeks to challenge is not "aggrieved" thereby and thus has no standing to obtain a judicial resolution of his challenge. Tacony Civic Ass'n v. Pa. Liquor Control Bd., 668 A.2d 584, 589 (Pa. Cmwlth. 1995) (citing Wm. Penn Parking Garage, Inc. v. City of Pittsburgh, 346 A.2d 269 (Pa. 1975)). In particular, it is not sufficient for a person claiming to be aggrieved

8

to assert the common interest of all citizens in procuring obedience to the law. Wm. Penn Parking Garage; Tacony Civic Ass'n.

Here, the Board observed that Musgrave owns a building at 224 South Highland which has seven residential and three commercial units. Bd. Op. at 14. However, Musgrave does not live in the building. Id. Nonetheless, Musgrave believes that noise from Licensee's rooftop deck would enter the windows of his residential tenants and make it difficult for those tenants to sleep or study. Id. Musgrave fears that this would result in his residential tenants moving out. Id. Further, Musgrave believes that if Licensee has entertainment on the rooftop deck that he will not be able to rent his residential units. Id. Musgrave also expressed concern that objects may be dropped from the rooftop deck and cause injury to the people below. Id.

However, the Board found that Musgrave failed to present sufficient non-speculative evidence in support of his assertions that he would be directly aggrieved by the approval of Licensee's extension application. Id. A speculative or perceived threat to a nearby area, unsupported by actual evidence, is not sufficient to deny a license application. K & K Enters. Therefore, the Board determined Musgrave failed to establish he would be directly aggrieved by Licensee's extension application. Bd. Op. at 14. Musgrave petitions for review.[2]

_____

[2] Our review of a decision of the Board is limited to determining whether the Board's findings were supported by substantial evidence, whether there was a constitutional violation or an error of law, and whether the practices and procedures of the Board were followed. Malt Beverage Distribs. Ass'n v. Pa. Liquor Control Bd., 918 A.2d 171 (Pa. Cmwlth. 2007), aff'd, 974 A.2d 1144 (Pa. 2009).

9

## II. Discussion

## A. Petition to Intervene

## 1. Argument

Musgrave contends the Board erred in denying him standing in Licensee's extension application because he will be directly aggrieved by the grant of a permit for a rooftop deck for Licensee's premises at 216 South Highland Avenue. Licensee plans to have a 35-foot by 75-foot open-air rooftop deck. In addition, Licensee has an amusement permit that will allow it to play live music until 2:00 a.m., and Manager indicated that providing live entertainment is a possibility. Manager foresees Licensee's hours of operation as 10:00 a.m. to 11:00 p.m. on Sunday, 11:00 a.m. to 12:00 a.m. on Monday through Thursday, and 11:00 a.m. to 2:00 a.m. on Friday and Saturday.

Apartment No. 3 in Musgrave's building at 224 South Highland is approximately 67 feet from Licensee's proposed rooftop deck. The apartment's bedroom window faces the proposed deck. In addition, many other windows of various apartment units at 224 South Highland are a similar distance away from the proposed rooftop deck. Moreover, there is a wall to the side of the proposed deck that would deflect the rooftop noise toward 224 South Highland. Musgrave maintains Licensee presented no specific plans in terms of height or material for a wall to run between its rooftop premises and that of Mad Mex, a neighboring establishment. Musgrave believes such a wall could deflect noise away from 224 South Highland.

Musgrave further argues that Licensee performed no studies or tests regarding ways to prevent or decrease noise emanating from its proposed rooftop deck from reaching the windows of the rental units at 224 South Highland. Musgrave is concerned that noise from the rooftop deck will enter the windows of his residential tenants and make it difficult for them to sleep or study. Therefore, Musgrave is afraid his current tenants will move out and he will be unable to re-rent his residential units at a price that will allow his building to survive financially.

## 2. Analysis

In Tacony Civic Association, we reasoned that protestants who failed to present any evidence at the Board hearing that the grant of a license to the applicant would directly affect their substantial interests failed to demonstrate the likelihood of immediate harm as required by William Penn Parking Garage. Absent evidence of specific harmful consequences that would immediately affect them, the protestants asserted only the potentiality of harm. As such, they could not be considered aggrieved under either Section 702 of the Administrative Agency Law, 2 Pa. C.S. §702, or Section 404 of the Liquor Code. Therefore, we held the protestants did not have standing to challenge the Board's order granting the applicant's petition for a license transfer.

We have some question as to the manner in which the Board explained its rationale. In particular, we question the Board's determination that Musgrave lacked standing to intervene as a party. Although Musgrave does not reside in the building, he has an immediate possessory interest in the unoccupied residential units,

11

even if he does not sleep in any of them. Accordingly, there is some basis for Musgrave to have standing to object to the extension application.

This quirk in rationale, however, is not a reason to disturb the ultimate result reached by the Board. This is because Musgrave already received all the procedural benefits of being a party, by reason of his full participation at the hearing before the Board. However, after an unhindered opportunity to do so, he failed to produce non-speculative evidence of an immediate injury to his interests.

More particularly, although Musgrave is worried that noise from Licensee's rooftop deck could disturb his residential tenants causing them to move out, he failed to present any evidence from any of his tenants in support of his concerns. None of Musgrave's tenants filed a protest or petitioned to intervene in Licensee's extension application. None of Musgrave's tenants testified they would move out of 224 South Highland if Licensee opened a rooftop deck. In fact, Musgrave did not even speak with any of his tenants about the proposed rooftop deck. Therefore, the record contains no evidence that activities on Licensee's rooftop deck would disturb Musgrave's tenants. Consequently, Musgrave's fears that his tenants will be so disturbed that they will move out and that he will be unable to rent the vacated units to new tenants is speculative.

Further, Musgrave did not present testimony from any professional realtor or prospective tenant in support of his concerns. Musgrave also failed to present any data, report or other documents supporting his subjective and speculative beliefs. Cf. Manyunk Dev. Corp. v. Pa. Liquor Control Bd., 715 A.2d 518 (Pa.

12

Cmwlth. 1998) (lower court's finding that expansion of premises would be detrimental to community was supported by expert engineering testimony and traffic and parking studies presented by protestants).

Also, as to a potential music/noise injury, Licensee holds an amusement permit. F.F. No. 16. However, in the eight months prior to the Board hearing that it had been in business, Licensee did not provide entertainment. Id. Further, Licensee's Manager did not know whether Licensee would provide entertainment in the future. Id. In any event, the Manager testified that Licensee would comply with the Board's amplified music regulations. Id. Pursuant to Section 493(34) of the Liquor Code, 47 P.S. §4-493(34), a licensee may not use a loudspeaker or similar device whereby the sound of music or other entertainment can be heard beyond the licensee's property line. See Haugh v. Pennsylvania Liquor Control Bd., 185 A.3d 469 (Pa. Cmwlth. 2018). Under these circumstances, a potential music/noise injury is speculative and remote.

Similarly, Musgrave's concerns that Licensee's patrons may drop or throw objects from the rooftop deck and injure people on the sidewalk below is also unsupported by any testimonial or documentary evidence. Licensee's rooftop deck will be set back approximately 20 feet from the front of the building. Further, Musgrave may not rely on speculative harm to the public in general to establish standing. Wm. Penn Parking Garage; Tacony Civic Ass'n.

For these reasons, we discern no error or abuse of discretion in the Board's ultimate determination that Musgrave failed to present sufficient, non-

speculative evidence to show he would be harmed by Licensee's extension application. Tacony Civic Ass'n.

## B. Zoning Code

### 1. Argument

Musgrave also points out that Licensee's establishment (Urban Tap) and the apartment building at 224 South Highland are in an LNC Zoning District. Pursuant to Section 904.02A of the City's Zoning Code, entitled "Purpose," an LNC district is intended to:

> 1. Maintain the small scale and rich diversity of neighborhood-serving commercial districts;
>
> 2. Promote and enhance the quality of life in adjacent residential areas; and
>
> 3. Reduce the adverse impacts that are sometimes associated with commercial uses in order to promote compatibility with residential development.

Pgh. Zoning Code §904.02A.

In the present case, Musgrave argues, noise from Licensee's rooftop deck would not enhance the quality of life for the residents of 224 South Highland. To the contrary, it would interfere with their ability to sleep or their ability as college students to study. Therefore, Musgrave essentially asserts the Board's grant of Licensee's extension application is inconsistent with Section 904.02A of the Zoning Code.

14

## 2. Analysis

Having determined the Board did not err in concluding that Musgrave failed to present sufficient non-speculative evidence that he would be harmed by Licensee's extension application, we need not address Musgrave's specious argument that the Board erred in determining that the grant of the extension application would not violate Section 904.02A of the City's Zoning Code. In addition, we note that the application of the City's Zoning Code was never at issue in the Board proceeding or in this appeal. As the Board acknowledges in its brief, it has no authority to enforce the City's Zoning Code. See Board's Br. at 13 n.5.

Therefore, we affirm the Board's order approving Licensee's application for an extension of its premises.

_____
ROBERT SIMPSON, Judge

15

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

John Kerr Musgrave, IV,                :
                        Petitioner        :
                                  :
            v.                             :   No. 1679 C.D. 2017
                                  :
Pennsylvania Liquor Control Board,     :
                     Respondent        :

# **O R D E R**

      **AND NOW**, this 11th day of October, 2018, for the reasons stated in the foregoing opinion, the order of the Pennsylvania Liquor Control Board is **AFFIRMED**.

                                        _____
                                        ROBERT SIMPSON, Judge