IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania  :
                              :
          v.                  :     No. 1529 C.D. 2023
                              :     Argued: December 8, 2025
Andrew Burch McCormack,        :
               Appellant      :


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
          HONORABLE MICHAEL H. WOJCIK, Judge (P.)
          HONORABLE MARY HANNAH LEAVITT, Senior Judge


OPINION NOT REPORTED


MEMORANDUM OPINION BY
PRESIDENT JUDGE COHN JUBELIRER          FILED: January 27, 2026

        Andrew Burch McCormack (McCormack), pro se, appeals from the Order of
the Court of Common Pleas of York County (common pleas), dated November 3,
2023, affirming McCormack's summary conviction before the Magisterial District
Judge (MDJ) on one count of violating Ordinance No. 175 (Ordinance) of the
Township of Conewago (Township), a nuisance ordinance, as a result of his dog
barking.  On appeal, McCormack challenges his summary conviction asserting both
constitutional violations and errors of law by common pleas.  Upon careful review,
we conclude that the Ordinance is not so unconstitutionally vague as to be void, that
McCormack's due process and fair trial rights under the Fifth and Sixth
Amendments to the United States Constitution, U.S. CONST. amends. V, VI, were
not violated, and that common pleas did not err in relying on certain witnesses'
testimony in rendering its decision.  Accordingly, we affirm.

## I.  BACKGROUND

McCormack resides in the Township.  On March 7, 2023, the Northern York County Regional Police Department (police department) issued a non-traffic citation (citation) charging McCormack with a summary offense of violating Section 1(A)(iii) of the Ordinance because his dog was barking continuously and/or intermittently for an extended period.  (Original Record (O.R.) at 28.[1])  The citation was received by the MDJ on March 15, 2023, and on May 10, 2023, the MDJ held a summary trial where McCormack was convicted and ordered to pay a $25.00 fine and associated fees, costs, and restitution of $136.08.  (*Id*. at 25-26, 28-29.)

McCormack timely appealed the summary conviction to common pleas.  (*Id*. at 21, 23.)  On July 19, 2023, common pleas held a hearing on McCormack's summary conviction appeal and took testimony from McCormack, McCormack's neighbor and the complainant, Robert Berninger (Berninger), and the issuing officer, Officer Michael Miller (Officer Miller).  (Transcript (Tr.) at 1-2.)

Berninger testified that there were ongoing issues with McCormack's barking dog since at least 2021 and he called police on occasion.  (Tr. at 5-10.)  Berninger testified that around 10:00 a.m. or 11:00 a.m. on March 7, 2023, the date of the incident resulting in the citation, McCormack was again away from his home and the dog was running in and out of the house through a dog door and was barking intermittently for approximately 45 minutes before Berninger called police.  (*Id*. at 9-10.)  Berninger testified he made 3 separate audio recordings of the incident, ranging from 4 minutes to over 12 minutes in length, and notified the police.  (*Id*. at 9-17.)  The recordings were admitted into evidence based on common pleas' crediting Berninger's testimony about the recordings and because McCormack

---

[1] We cite to the Original Record as paginated in the PDF document.

ultimately stipulated to the three audio recordings. (*Id*. at 15-16, 18, 46.) Berninger testified the barking was intermittent, "[i]t's normally over an hour or two period, the dog will be out there barking for five or ten minutes, he'll go in for five or ten minutes, then he'll come out and bark again." (*Id.* at 19-20.)

Before McCormack cross-examined Berninger, common pleas advised McCormack that this was an opportunity to ask questions of Berninger, not for McCormack to testify. (*Id.* at 20.) Common pleas also advised McCormack of his right against self-incrimination. (*Id.* at 21.) On cross-examination, McCormack asked Berninger how much distance separated their homes. When Berninger responded approximately 50 feet, McCormack stated he had photographic evidence that it was actually 78 to 90 feet, at which time common pleas advised McCormack that he was now testifying and he would have an opportunity later to do so. (*Id.* at 22.) When McCormack attempted to question Berninger about other animals in the neighborhood or a nearby farm, the Appellee, the Commonwealth of Pennsylvania (Commonwealth), objected on the basis of relevancy and common pleas sustained the objection. (*Id.* at 24, 26.)

Officer Miller testified that prior to the March 7, 2023 complaint, the police department received three separate complaints regarding McCormack's dog. (*Id*. at 32-35.) Officer Miller testified that on March 7, 2023, shortly before noon, he received a call from Berninger who described the prior incidents, the incident that occurred that day, and emailed Officer Miller copies of the audio recordings. (*Id*. at 36-38.) Based on this information, Officer Miller testified that he believed this information was sufficient to issue the citation. (*Id*. at 38.)

Before McCormack cross-examined Officer Miller, common pleas reminded McCormack it was his opportunity to ask questions of Officer Miller, not to testify.

3

(*Id.* at 39.) McCormack asked Officer Miller about the standard procedures used by the police department during investigations, and Officer Miller testified that the investigation began with the phone call and complaint from Berninger and resulted in the citation. (*Id*. at 39-40.) When McCormack continued to inquire as to the steps of a standard investigation, common pleas stated Officer Miller already responded as to the investigation undertaken in McCormack's case and because every investigation is different, it is irrelevant what steps may be taken in other cases. (*Id.* at 41.) Common pleas asked McCormack if "there [was] something specific that [McCormack was] trying to get to . . . [b]ecause [they were] limited with time." (*Id.*) The following exchange then occurred

> [McCormack]: There's a time limit on this, actually?
>
> [Common pleas]: Yeah, there is. I'm not taking all day for your case.
>
> [McCormack]: So I don't actually get to present my side of the case?
>
> [Common pleas]: You are going to get to present your side of the case, but you have to focus on what's relevant.

(*Id.* at 41-42.)

McCormack then began to make legal argument, to which the Commonwealth objected. (*Id.* at 42-43.) Common pleas agreed and attempted to clarify what McCormack was asking of the witness. (*Id.* at 43-44.) McCormack also asserted that Officer Miller's testimony differed from that given before the MDJ, resulting in the Commonwealth objecting. (*Id.* at 45.) The trial court explained there was a proper way to confront a witness with inconsistent statements and this is not what McCormack was doing. (*Id.*)

4

At the close of the Commonwealth's case in chief, common pleas explained to McCormack that "this is [his] opportunity to present [his] case," but advised him he had no obligation to do so since the Commonwealth bore the burden and reminded McCormack that he had a right against self-incrimination. (*Id.* at 46.) When McCormack indicated he wanted to testify, common pleas swore him in and stated "[n]ow, sir, in presenting your case, I'm going to give you five minutes. Tell me your story." (*Id.* at 47.) McCormack questioned the five minutes, saying it "is a little short if I got actual[] recordings on my phone of -- I have dogs barking and photographic evidence of where the witness lives." (*Id.*) McCormack attempted to present audio recordings of other barking dogs in the neighborhood, but those recordings were excluded by common pleas as not relevant. (*Id.* at 48.) McCormack then stated "[f]ive minutes to present four or five case laws is a little – it's not much time and stuff when actually the [Commonwealth] over there had plenty of time, but all right." (*Id.*) The Commonwealth then asked common pleas to reinstruct McCormack that this was time to testify not present legal argument. (*Id.*) Common pleas stated "I want to know if you have anything to say about your dog barking or not barking. This is your opportunity for testimony. If you would like to make legal argument, that is separate." (*Id.*)

McCormack testified that his dog typically barks between 10:00 a.m. and 8:00 p.m. but is "not outside 24/7 barking or things like that." (*Id.* at 49.) McCormack testified his dog barks because other dogs are barking, also known as "socially fascinated barking," and it may last five to six minutes." (*Id.* at 49-50.) Common pleas then asked McCormack about the photos he wanted to introduce, stating it was interested in the proximity of McCormack's and Berninger's homes. (*Id.* at 50-51.) When McCormack stated they were on his phone, common pleas explained the

pictures needed to be printed to be admitted into evidence. (*Id*. at 51-52.) However, common pleas stated that, "given the time constraints," it was taking the matter under advisement and instructed McCormack that he would have 10 days to file a written memorandum of law presenting his legal arguments and defense, and that he could attach printed copies of the pictures thereto. (*Id*. at 52-54.) Common pleas then asked McCormack whether he had "anything else relevant to the facts," and McCormack only asked some questions about filing the legal memorandum. (*Id*. at 53-54.) Prior to recessing, McCormack asked for 30 days to file a legal memorandum, which common pleas granted. (*Id*. at 56.)

Following the receipt of the parties' legal memoranda, common pleas issued the Order affirming after a de novo review McCormack's summary conviction before the MDJ. First, common pleas determined that neither *Commonwealth v. Graf*, 81 A.3d 183 (Pa. Cmwlth. 2013), nor *Commonwealth v. Ebaugh*, 783 A.2d 846 (Pa. Cmwlth. 2001), support the notion that a police officer must witness a barking dog to issue a citation under the Ordinance, nor does any case law support the argument that daytime convictions are prohibited under the Ordinance, as McCormack contended. (Order at 3-6.) Further, common pleas found McCormack was convicted based on testimony presented by Berninger, not Officer Miller. (*Id*. at 6-7.) Common pleas also determined that pursuant to Pennsylvania Rule of Evidence 901(b), Pa.R.E. 901(b), digital evidence may be authenticated by direct evidence such as testimony from a person with personal knowledge or by stipulation, which occurred here. (*Id*. at 7-8.) Next, common pleas analyzed the Ordinance under the void-for-vagueness doctrine and *Ebaugh*, and determined that based on the Ordinance's language and in accordance with this Court's analysis in *Ebaugh*, the Ordinance provides an objective standard and is constitutional. (*Id*. at 8-11.)

6

Finally, common pleas addressed McCormack's due process arguments, where McCormack argued that the lack of notice of prohibited conduct in the Ordinance is a substantive due process violation. (*Id*. at 11.) Common pleas reasoned that, where no fundamental right is implicated, a substantive due process challenge requires the application of the rational basis test, and applying this test, the Ordinance bears a rational relationship to the important state interest of prohibiting defined nuisances. (*Id*. at 11-12 (citing *Commonwealth v. Agnew*, 600 A.2d 1265, 1268 (Pa. Super. 1991)).)[2] Thus, common pleas concluded that McCormack was guilty of violating Section 1(A)(iii) of the Ordinance and, therefore, affirmed the summary conviction before the MDJ. (*Id*. at 12.)

McCormack timely appealed.[3] Common pleas ordered McCormack to file a concise statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b), Pa.R.A.P.1925(b). (O.R. at 92-93.) McCormack complied and complained on appeal that the Ordinance was vague and unconstitutional, that common pleas violated his due process rights by limiting testimony to five minutes, and that common pleas relied on unsubstantiated evidence in rendering its decision.[4] (*Id*. at 101-02.) Common pleas filed an opinion pursuant to Pennsylvania Rule of Appellate Procedure 1925(a), wherein common pleas fully incorporated the analysis contained in its Order as to the constitutionality of the

---

[2] "In general, Superior Court decisions are not binding on this Court, but they offer persuasive precedent where they address analogous issues." *Lerch v. Unemployment Comp. Bd. of Rev.*, 180 A.3d 545, 550 (Pa. Cmwlth. 2018).

[3] McCormack originally appealed to the Superior Court based on common pleas' statement in its Order that McCormack had 30 days to appeal to that Court. The Superior Court subsequently transferred this matter to our Court.

[4] McCormack also alleged the prosecution committed a discovery violation by not providing copies of materials and evidence prior to the hearing. McCormack does not appear to be pursuing that issue before this Court. Thus, we will not address it further.

7

Ordinance and McCormack's due process challenges. (Reproduced Record (R.R.) at 21.[5])  In addition, common pleas addressed whether its time limitation on McCormack's testimony prejudiced the case and determined that McCormack's right to a fair trial under the Sixth Amendment was not violated because, while McCormack's testimony was limited, McCormack actually had over an hour to cross-examine the Commonwealth's witnesses and present his case. (*Id*. at 21-22.) Common pleas also described McCormack's "testimony" as being "really legal argument rather than his view of what happened." (*Id.* at 22.)  Because common pleas permitted McCormack to file a legal memorandum addressing his arguments, common pleas found McCormack's right to a fair trial was not hindered. (*Id.*)

Finally, common pleas addressed whether the testimony presented by Berninger and Officer Miller regarding the barking dog was hearsay and determined that because Berninger and Officer Miller were present at the hearing to present their testimony, such testimony was not inadmissible hearsay under Pennsylvania Rule of Evidence 801(c), Pa.R.E. 801(c). (*Id*. at 25.)  Thus, common pleas concluded that the testimony presented was not based on hearsay and was sufficient credible evidence to support McCormack's conviction of a summary offense under the Ordinance and, therefore, requests that this Court affirm the Order. (*Id.* at 25-26.)

## II. DISCUSSION[6]

McCormack raises multiple issues on appeal, which we have consolidated and rephrased for ease of discussion:  (1) whether common pleas erred in not concluding

---

[5] Common pleas' Rule 1925(a) Opinion is not separately paginated.  Therefore, we cite to the pages as they appear in the Reproduced Record.

[6] "In reviewing a summary conviction matter, where [common pleas] has taken additional evidence in de novo review, our . . . review is limited to considering whether [common pleas] abused its discretion or committed an error of law." *Commonwealth v. Halstead*, 79 A.3d 1240, 1242 (Pa. Cmwlth. 2013) (citation omitted).

8

the Ordinance is unconstitutional as violative of the void-for-vagueness doctrine and violated due process because the Ordinance does not provide adequate notice of prohibited conduct; (2) whether McCormack's Fifth Amendment right to due process and Sixth Amendment right to a fair trial were abridged because common pleas limited McCormack's testimony to five minutes and interrupted and warned McCormack during his cross-examinations of Berninger and Officer Miller; and (3) whether common pleas relied on unsubstantiated evidence in rendering its decision.[7] We address each issue in turn.

### A. Constitutionality of the Ordinance

McCormack asserts the Ordinance is unconstitutionally vague because the Township does not provide guidelines as to what constitutes barking that is too "loud" or "persistent," and because Section 1(A)(iii) of the Ordinance does not specify permitted periods for barking, in contrast to Section 1(A)(ii) which specifies lawnmowers, tractors, power tools, chain saws, and similar devices cannot be used between 10:00 p.m. and 7:00 a.m. Thus, McCormack contends the lack of warning as to permitted periods for barking renders the Ordinance defective. (McCormack's Brief (Br.) at 9-12 (citing *Lanzetta v. State of New Jersey*, 306 U.S. 451 (1939); *Connally v. Gen. Constr. Co.*, 269 U.S. 385 (1926)).) McCormack also asserts that had the Township wanted to specify periods that barking is not permitted, it would have expressly done so. (*Id*. at 12.)

In addition, McCormack argues that criminal statutes must expressly prescribe the prohibited conduct they were enacted to regulate in order to provide

---

[7] McCormack attaches documents to his brief which are not part of the original record; therefore, we may not consider them. *B.K. v. Dep't of Pub. Welfare*, 36 A.3d 649, 657 (Pa. Cmwlth. 2012).

citizens with notice of such prohibited conduct, and criminal statutes that do not provide such notice violate the void-for-vagueness doctrine and are void. (*Id*. at 12-13.) Specifically, McCormack asserts that the doctrine focuses on standards governing law enforcement investigations and the issuance of charges. (*Id*. at 13 (citing *Smith v. Goguen*, 415 U.S. 566 (1974); *Kolender v. Lawson*, 461 U.S. 352, 357-58 (1983)).) In sum, the crux of McCormack's arguments here are that because the Ordinance did not expressly set forth objective standards of conduct, McCormack had no way of knowing what type of conduct was acceptable or prohibited. (*Id*. at 15-18.) In turn, according to McCormack, it was error for common pleas to find otherwise.

In response, the Commonwealth argues that ordinances are presumed constitutional and for an ordinance to be found unconstitutional based on vagueness it must fail to give a person of ordinary intelligence a reasonable opportunity to know what conduct is prohibited by law. (Commonwealth's Br. at 7 (citing *Commonwealth v. Fisher*, 350 A.2d 428 (Pa. Cmwlth. 1976); *Widmyer v. Commonwealth*, 454 A.2d 1048 (Pa. Cmwlth. 1983)).) The Commonwealth asserts that the Ordinance clearly prescribes an "objective standard which looks to the impact of noise based on how a reasonable person under the particular circumstances of the incident would react to [] persistent noise," and McCormack acknowledges that the Ordinance should be applied to ordinary people and not "hypersensitive" people. (*Id*. (citing *City of Philadelphia v. Cohen*, 479 A.2d 32 (Pa. Cmwlth. 1984)).) As such, the Commonwealth argues that the evidence presented at the hearing before common pleas, showing that McCormack's dog was outside the house barking for long enough to disrupt Berninger, was sufficient to

find McCormack guilty of a summary offense under the Ordinance. (*Id*. at 8.) In turn, the Commonwealth requests affirmance of common pleas' Order.

"The void-for-vagueness doctrine, as [the Supreme Court of the United States has] called it, guarantees that ordinary people have 'fair notice' of the conduct a statute proscribes." *Sessions v. Dimaya*, 584 U.S. 148, 155-56 (2018) (citation omitted). This is to say that "the void-for-vagueness doctrine is grounded on federal due process norms," *Commonwealth v. Herman*, 161 A.3d 194, 214 (Pa. 2017), and "[t]he doctrine is based on the idea of fairness [and i]ts purpose is **only** to give 'fair warning' of prohibited conduct," *San Filippo v. Bongiovanni*, 961 F.2d 1125, 1135 (3d Cir. 1992) (emphasis added) (citing *Colten v. Kentucky*, 407 U.S. 104, 110 (1972)).[8]

In *Borough of Palmyra v. Brandt* (Pa. Cmwlth., No. 866 C.D. 2016, filed August 25, 2017), this Court set forth the void-for-vagueness doctrine as it has been applied in Pennsylvania:

> "Due process demands that a statute not be vague." *Commonwealth v. Thur*, 906 A.2d 552, 561 (Pa. Super. 2006); *see Commonwealth v. Noel*, 857 A.2d 1283 (Pa. 2004). The void-for-vagueness doctrine "requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Commonwealth v. Duda*, 923 A.2d 1138, 1147 (Pa. 2007). In other words, a law is unconstitutionally vague if "persons of common intelligence must necessarily guess at its meaning and differ as to its application" or it "impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis . . . ." *Commonwealth v. Cotto*, 753 A.2d 217, 220 (Pa. 2000) (citations and internal quotation marks omitted).

---

[8] "[T]he void-for-vagueness doctrine[ is] a doctrine that is mandated by the Due Process Clauses of the Fifth Amendment (with respect to the Federal Government) and the Fourteenth Amendment[ to the United States Constitution, U.S. CONST. amend. XIV,] (with respect to the States)." *Welch v. United States*, 578 U.S. 120, 124 (2016).

11

"However, a statute will not be deemed unconstitutionally vague if the terms, when read in context, are sufficiently specific that they are not subject to arbitrary and discriminatory application." *Id*. at 220. Where a vagueness challenge does not allege that the statute infringes First Amendment[, U.S. CONST. amend. I,] freedoms, "the specificity of a statute must be measured against the conduct in which the party challenging the statute has engaged." *Commonwealth v. Mayfield*, 832 A.2d 418, 422 (Pa. 2003). Significantly, "the violator whose conduct falls clearly within the scope of [the statutory] standard has no standing to complain of vagueness," *Commonwealth v. Heinbaugh*, 354 A.[]2d 244, 246 (Pa. 1976), or to assert "the vagueness of the law as applied to the conduct of others." *Village of Hoffman Estates v. Flipside*, 455 U.S. 489, 495 (1982). "The rationale [for this rule] is evident: to sustain such a challenge, the complainant must prove that the enactment is vague not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all." *Id*. at 495 n.7 (citation and internal quotation marks omitted); *see Holder v. Humanitarian Law Project*, 561 U.S. 1, 18-19 (2010).

In entertaining a void-for-vagueness claim, this Court initially focuses on the language of the Ordinance, *see Boos v. Barry*, 485 U.S. 312, 329 (1988), keeping in mind the statutory construction principle that "[u]ncertainties in the interpretation of an ordinance are to be resolved in favor of a construction which renders the ordinance constitutional." *Upper Salford T*[*wp*.] *v. Collins*, 669 A.2d 335, 336 (Pa. 1995).

*Id.*, slip op. at 9-10 (citation modified).[9]

Section 2 of the Ordinance makes it "unlawful for any person to create, continue, cause, maintain, or permit to exist, any nuisance within [] Township." Ordinance § 2. The Ordinance defines a nuisance, in relevant part, as follows:

A. Nuisance: any use of property or conduct, or activity or condition upon property within [] Township that shall cause or result in

---

[9] Unreported opinions of this Court issued after January 15, 2008, may be cited for their persuasive value. *See* Rule 126(b) of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P 126(b); Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

12

annoyance or discomfort beyond the boundaries of such property which disturbs a reasonable person of normal sensitivities, taking into consideration the location of the use or condition and the nature and condition of the surrounding neighborhood. Specifically, the word "nuisance" shall include but shall not be limited to the following:

. . . .

(iii) Owning, possessing, controlling, or harboring any animal or fowl which barks, bays, cries, squawks, or makes any other such noise continuously and/or intermittently for an extended period which annoys a reasonable person of normal sensitivities.

*Id.* § 1(A)(iii).

Based on a plain reading of this language, the overarching goal of the Ordinance is to prevent animals under the dominion of a person, and present on property within the Township, from causing noise for extended periods. While the Ordinance does not define the terms "reasonable person" or "normal sensitives," *id.*, this does not render the Ordinance violative of the void-for-vagueness doctrine. In *Ebaugh*, 783 A.2d 846, this Court had occasion to examine the same Ordinance that is at issue here and held that the Ordinance was not so unconstitutionally vague as to be void. There, a Township resident received several citations under the Ordinance because his dog barked continuously for 10-minute periods and intermittently in 20 to 30 second intervals. *Id*. at 848. The resident was ultimately convicted of summary offenses under the Ordinance before an MDJ and ordered to pay a fine. On appeal to this Court, the resident challenged the Ordinance as unconstitutionally vague because the Ordinance only referred to offensive conduct as disturbing a person of "reasonable sensitivities," but did not contain a standard defining the prohibited conduct. *Id*. at 849. In examining Section 1(A)(iii) of the Ordinance, we reasoned "that the phrase 'annoy or disturb a reasonable person of

13

normal sensitivities' in the Township's [O]rdinance is an objective standard that looks to the impact of noise upon a reasonable person under the particular circumstances of the incident." *Id*. at 850. We, thus, concluded that "[i]n our view, a person of ordinary intelligence would understand what conduct violates this provision and, accordingly, the [O]rdinance is constitutional." *Id*.; *see also Haugh v. Pa. Liquor Control Bd.*, 185 A.3d 469, 472-73 (Pa. Cmwlth. 2018) ("In *Ebaugh*, this Court recognized that similarly-worded noise ordinances in various municipalities had been found by Pennsylvania Courts not to be unconstitutionally vague.").

McCormack argues that *Ebaugh* is not applicable to this case because the noise violation in *Ebaugh* occurred at night, while the violation here occurred during the day. (McCormack's Br. at 8.) McCormack asserts that because Section 1(A)(iii) does not provide a time restriction for noisy animals during daytime hours, the Ordinance is vague and provides no standard at all, particularly when considered in light of Section 1(A)(ii) of the Ordinance, which restricts the use of lawnmowers, tractors, mechanically powered tools, and similar devices only between the hours of 10:00 p.m. and 7:00 a.m. (*Id*. at 10-11, 16-17.) McCormack maintains the "two competing [provisions] [] make it difficult for people of common intelligence to understand what is acceptable or not during daytime hours." (*Id*. at 10.) We do not find this argument persuasive because neither the Ordinance, nor this Court's decision in *Ebaugh*, distinguished between the applicability of the Ordinance during daytime and nighttime hours. Moreover, it is notable that the Township chose not to include a time restriction in Section 1(A)(iii) of the Ordinance, even though it clearly knew how to do so based on its inclusion in Section 1(A)(ii). "It is a well-settled principle of statutory construction that where the [governing body] includes

14

specific language in one section of [an ordinance] and excludes it from another, it should not be implied where excluded." *Pa. State Police, Bureau of Liquor Control Enf't v. Prekop*, 627 A.2d 223, 226 (Pa. Cmwlth. 1993).[10]

Accordingly, consistent with our holding in *Ebaugh* the Ordinance provides a reasonable person with sufficient notice of the type of conduct proscribed, which is an ascertainable standard upon which to measure one's own conduct. To conclude otherwise would frustrate the basic purpose of the Ordinance. Therefore, the Ordinance does not violate the void-for-vagueness doctrine as applied to McCormack's conduct. Here, despite knowledge of prior complaints about the dog barking, McCormack continued to permit his dog to go outside at will through a dog door while McCormack was not at home. While outside, the dog repeatedly barked. According to common pleas' Rule 1925(a) Opinion, on the day of the incident, the dog went in and out of McCormack's house barking every 5 to 10 minutes for approximately 45 minutes before McCormack's neighbor called police. (R.R. at 20.) The neighbor made multiple recordings of the dog barking that day, which were 4, 8, and 12 minutes long, respectively. Common pleas stated "[w]hether [McCormack's] dog barked for an hour straight, for twelve minutes, or in five-to-ten-minute intervals over the course of a few hours (as [] Berninger indicated had occurred in his testimony) is immaterial." (*Id.* at 26.) Common pleas concluded that, based on Berninger's testimony, which it found credible, the Township met its burden of showing that the barking would "annoy[] a reasonable person of normal sensitivities." (*Id.*) Under these circumstances, and based on these findings, we

---

[10] Although *Prekop* dealt with a state statute, we have held that the rules of statutory construction are equally applicable to ordinances. *Geerling Florist, Inc. v. Bd. of Supervisors of Warrington Twp.*, 226 A.3d 670, 676 (Pa. Cmwlth. 2020).

15

agree. For similar reasons, the Ordinance also does not violate McCormack's due process rights by not providing a clear standard.

### B. *Fifth and Sixth Amendment Challenges*

McCormack also argues that common pleas improperly restricted his ability to present his case at the hearing. According to McCormack, the Due Process Clause of the Fifth Amendment, made applicable to the states by the Fourteenth Amendment to the United States Constitution, U.S. CONST. amend. XIV, and the Compulsory Process Clause and Confrontation Clause of the Sixth Amendment, required common pleas to allow McCormack to present his case as he saw fit. (*Id.* at 21 (citing *United States v. Hennis*, 79 M.J. 370 (C.A.A.F 2020); *United States v. Bess*, 75 M.J. 70 (C.A.A.F. 2016)).) However, these rights were violated, McCormack asserts, based on common pleas' repeated statements cautioning McCormack to ask questions, not present his own testimony, during his cross-examinations of the prosecution's witnesses and by common pleas imposing a five-minute time limitation on his own testimony. (*Id.* at 19-20.)

The Commonwealth responds that McCormack's right to a fair trial was not violated. It points out that McCormack spent over an hour attempting to cross-examine Berninger and Officer Miller. (Commonwealth's Br. at 11.) In addition, common pleas gave McCormack an opportunity to testify on his own behalf, but when McCormack began offering legal argument instead of testimony, common pleas instructed him to file a legal memorandum instead. (*Id.*) Thus, the Commonwealth asserts McCormack had a fair trial. (*Id.*)

The Fifth Amendment of the United States Constitution provides, in relevant part, that "[n]o person shall be . . . deprived of life, liberty, or property, without due

16

process of law," U.S. CONST. amend. V, while, similarly, the Fourteenth Amendment provides, in part, that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law," U.S. CONST. amend. XIV, § 1. "While not capable of exact definition, the basic elements of procedural due process are adequate notice, opportunity to be heard, and the chance to defend oneself before a fair and impartial tribunal having jurisdiction of the case." *Commonwealth v. Thompson*, 281 A.2d 856, 858 (Pa. 1971). The Sixth Amendment provides, in pertinent part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him [Confrontation Clause] . . . [and] to have compulsory process for obtaining witnesses in his favor [Compulsory Process Clause]." U.S. CONST. amend. VI.

As stated above, a defendant clearly has the right to defend himself against the charges he faces. *Thompson*, 281 A.2d at 858. When a defendant has been denied the right to present a defense, we have held remand is appropriate for the defendant to do so. *See Commonwealth v. Heckman* (Pa. Cmwlth., No. 1467 C.D. 2013, filed May 19, 2014), slip op. at 7-8; *Commonwealth v. James* (Pa. Super., No. 1004 WDA 2021, filed May 20, 2022), slip op. at 7-8.[11] Here, McCormack was not entirely denied the opportunity to present his defense; rather, common pleas established a five-minute time limitation for McCormack to testify on his own behalf. This, according to McCormack, violated his constitutional rights.

McCormack does not cite, and we have not found, any analogous case law within Pennsylvania where a criminal defendant asserts constitutional challenges

---

[11] Pursuant to Pennsylvania Rule of Appellate Procedure 126(b)(1), Pa.R.A.P. 126(b)(1), non-precedential decisions of the Superior Court filed after May 1, 2019, may be cited for their persuasive value.

based on a trial court's time limitations on the defendant's testimony.[12] However, looking to decisions from our federal sister courts provides some guidance. For example, in *United States v. Green*, 516 Fed. App'x 113 (3d Cir. 2013), the United States Court of Appeals for the Third Circuit considered, in part, whether a pro se defendant's rights to a fair trial and to confront witnesses under the Sixth Amendment were violated because the trial court "placed time limits on his cross-examination and closing statements, repeatedly asked him if he had any more questions during his cross-examination, and warned him not to ask argumentative questions." *Id*. at 129.[13] The Third Circuit concluded "that this [did not] amount[] to [the] denial of a fair trial" and reasoned that the trial court "was simply attempting to maintain order[, and] nothing suggest[ed] that [the trial court's] tone was intemperate or [its] requests unreasonable." *Id*. (citing *United States v. Donato*, 99 F.3d 426, 435 (D.C. Cir. 1996)).

In addition, in *United States v. Spence*, 703 Fed. App'x 121 (3d Cir. 2017), a pro se defendant argued on appeal that his right to confront witnesses was violated because the trial court placed time restrictions on his cross-examination and, further,

---

[12] In *Commonwealth v. Hutchinson*, 25 A.3d 277 (Pa. 2011), one of the issues before our Supreme Court was whether a time limitation imposed on closing arguments, where trial and appellate counsel failed to object to the time limitation, amounted to ineffective assistance of counsel. Our Supreme Court recognized that a defendant has a right to summation as announced in *Commonwealth v. Brown*, 676 A.2d 1178, 1185 (Pa. 1996), but the length of closing arguments is left to the discretion of the trial court unless an unreasonable time limitation is imposed amounting to the denial of the right. *Hutchinson*, 25 A.3d at 315. The Supreme Court, however, did not address whether the time limitation imposed was permissible, instead only focusing on the ineffective assistance of counsel claim. Thus, beyond reaffirming a trial court's discretion to impose time limitations on argument, *Hutchinson* does not aid our analysis.

[13] "Though this Court, in its application of federal substantive law, is not bound by the decisions of federal district courts, federal circuit courts, or the courts of other states, we may cite such decisions when they have persuasive value." *Desher v. Se. Pa. Transp. Auth.*, 212 A.3d 1179, 1186 n.7 (Pa. Cmwlth. 2019).

that as a pro se defendant, he should have been allotted more time to cross-examine than the government was provided because he lacked expertise. *Id*. at 124-25. The Third Circuit, however, disagreed and reasoned that the trial court limited the defendant's cross-examination to the same length as the direct examination because the defendant "had taken up a large amount of time asking confusing, repetitive, or only marginally relevant questions." *Id*. at 125. Thus, the Third Circuit held that the trial court did not abuse its discretion in imposing the time limitation and, even assuming *arguendo*, that this was error, any such error was harmless. *Id*.

Although *Green* and *Spence* involved limitations of cross-examination not presentation of a defense, like the Third Circuit in those cases, we view the time limitation imposed by common pleas on McCormack's testimony as common pleas' attempt to maintain order and to manage the courtroom and the docket, and this was within common pleas' discretion.

Furthermore, from a review of the record, McCormack did provide some testimony, but common pleas prevented him from attempting to make legal arguments in support of his position during his testimony. (*See, e.g.*, Tr. at 48 (McCormack stating "[f]ive minutes to present **four or five case laws** [sic] is . . . not much time") (emphasis added).) Instead of hearing legal argument, common pleas directed the parties to file post-trial memoranda setting forth their respective arguments. McCormack also indicated that he wanted to produce some recordings and photographs he had on his phone. However, the recordings were of other dogs barking, which the trial court properly held were not relevant to whether **McCormack** violated the Ordinance. *See Commonwealth v. Jones*, 323 A.3d 13, 21 (Pa. Super. 2024) (holding trial court did not err or abuse its discretion in precluding a defendant from introducing custody documents between the victim and another

19

man because they were not relevant to the defendant's rape charge).  As for the photos showing the relation of McCormack's home to Berninger's home, which were digitally on McCormack's phone, common pleas permitted McCormack time to print the photographs and attach them to his legal memorandum, without any authentication and notwithstanding that the Commonwealth would not be able to cross-examine McCormack regarding those photos.  (*Id.* at 52-54.)  In fact, after McCormack testified, it was common pleas who raised the issue of the photos because it was interested in the proximity of the homes.  (*Id.* at 50-51.)  Finally, before recessing, common pleas again asked McCormack whether he had "anything else relevant to the facts," and McCormack simply asked some questions about filing the legal memorandum.  (*Id.* at 53-54.)

Thus, we are not convinced that McCormack was denied an opportunity to present his defense by testifying on his own behalf or presenting evidence. Assuming *arguendo*, that common pleas' time limitation was error, this error was harmless because McCormack "has not suggested any potentially fruitful line of questioning that he was unable to pursue" or any evidence he was unable to offer. *See Spence*, 703 Fed. App'x at 125.  Therefore, McCormack's Fifth and Sixth Amendment rights were not violated by the time limitation imposed by common pleas on McCormack's testimony.

It is not clear if McCormack is also asserting that common pleas' interruptions and warnings during McCormack's cross-examinations of Berninger and Officer Miller denied him the right to confront the Commonwealth's witnesses.  To the extent he is, we again discern no error or abuse of discretion.  Our Supreme Court has held that the "right to 'be confronted with' such witnesses . . . includes the right

20

to conduct reasonable cross-examination." *Commonwealth v. Rogers*, 250 A.3d 1209, 1216 (Pa. 2021) (citing compilation of cases). However,

> [a]t the same time, the confrontation right is not absolute. It guarantees "an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *United States v. Owens*, 484 U.S. 554, 559 . . . (1988) (internal quotation marks and emphasis omitted). Thus, **trial courts "retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant**." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 . . . (1986).

*Id*. at 1216-27 (emphasis added). Similarly, "[t]he right to compulsory process encompasses the right to meet the prosecution's case with the aid of witnesses, and the right to elicit the aid of the Commonwealth in securing those witnesses at trial, both of which are fundamental to a fair trial." *Commonwealth v. Jackson*, 324 A.2d 350, 354-55 (Pa. 1974). Again, however, "[t]his constitutional right, though fundamental, is not, however, absolute, [and e]videntiary rules based on legitimate state interests which exclude certain witnesses or certain testimony are not inconsistent nor incompatible with the right to compulsory process." *Id*. at 355.

From a review of the transcript, it appears that, during McCormack's cross-examinations of Berninger and Officer Miller, McCormack was allotted ample leeway and great latitude in conducting the cross-examinations and, before a witness was excused, common pleas asked McCormack if he had any more questions. (Tr. at 21, 26-27, 29, 31.). While common pleas did not allow some lines of questioning, those issues were irrelevant to whether McCormack violated the Ordinance, and in other situations, McCormack was not cross-examining the witness, but instead was

21

offering his own testimony. (*Id*. at 13-14, 20-22, 24-26, 29, 41-42.) In sum, McCormack was not denied the right to confront his accusers or present a defense.

### C. Unsubstantiated Evidence

Finally, we turn to what McCormack calls "unsubstantiated evidence." (McCormack's Br. at 22-23.) McCormack argues that there was no evidence or documentation presented at the hearing to support his conviction and that the testimony presented by Berninger and Officer Miller was unsubstantiated and, therefore, could not be used by common pleas to support its decision. (*Id*.) In contrast, McCormack asserts that common pleas' decision "should have been based on the 12-minute intermittent [audio] recording of the dog not testimony that was irrelevant. (*Id*. at 22.)

The Commonwealth views this issue as a hearsay challenge and contends common pleas did not rely on any inadmissible hearsay testimony; rather Berninger and Officer Miller were present at the hearing to provide their own testimony, which was not hearsay and was properly admitted by common pleas. Moreover the Commonwealth asserts common pleas, as fact-finder, may weigh and consider the evidence and choose whether to credit that evidence, which common pleas did here. Because Berninger's testimony regarding the excessive barking was sufficient to support McCormack's summary conviction under the Ordinance, the Commonwealth asks the Court to affirm the Order.

Rule 801(c) of the Pennsylvania Rules of Evidence defines "[h]earsay" as "a statement that (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers into evidence to prove the truth of the matter asserted in a statement." Pa.R.E. 801(c). Generally, hearsay is inadmissible subject to certain

22

exceptions. Rule 802 of the Pennsylvania Rules of Evidence, Pa.R.E. 802. Here, Berninger's testimony, upon which common pleas relied in finding McCormack guilty of violating the Ordinance, is not hearsay. Berninger testified as to his own observations and experiences, and this first-hand knowledge is not hearsay.

It is not clear that McCormack is arguing the testimony was hearsay. Rather it appears McCormack is challenging the sufficiency of the evidence.

> This Court's . . . review when evaluating the sufficiency of the evidence in a conviction for a summary offense is whether, viewing all the evidence admitted at trial, together with all reasonable inferences therefrom, in the light most favorable to the Commonwealth, the trier of fact could have found that each element of the offense charged was supported by evidence and inferences sufficient in law to prove guilt beyond a reasonable doubt.

*Commonwealth v. Geatti*, 35 A.3d 798, 799 (Pa. Cmwlth. 2011) (citation omitted). As we recently explained,

> matters of credibility and evidentiary weight are within the exclusive discretion of the fact-finder. . . . [Common pleas, as t]he fact-finder is free to believe all, part or none of the evidence presented. . . . [A]s a reviewing court, [we] may not reweigh the evidence and substitute [our] judgment for that of the fact-finder.

*Commonwealth v. Burkholder*, 333 A.3d 739, 751-52 (Pa. Cmwlth. 2025) (internal quotation marks and citations omitted). Finally, "[r]esolving contradictory testimony and questions of credibility are matters for the finder of fact." *Commonwealth v. Salinas*, 307 A.3d 790, 795 (Pa. Super. 2023) (internal quotation marks and citation omitted).

Here, we agree with the Commonwealth that Berninger's testimony, which common pleas credited, is sufficient to support McCormack's conviction. As such, we discern no error or abuse of discretion by common pleas.

23

## III.  CONCLUSION

In summary, the Ordinance is not so unconstitutionally vague as to be void, McCormack's Fifth and Sixth Amendment rights were not violated, and common pleas did not err in relying on the evidence presented in rendering its decision. Accordingly, we affirm.

_____
RENÉE COHN JUBELIRER, President Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania    :
    :
           v.    :    No. 1529 C.D. 2023
    :
Andrew Burch McCormack,    :
            Appellant    :

# **O R D E R**

**NOW**, January 27, 2026, the Order of the Court of Common Pleas of York County, dated November 3, 2023, is **AFFIRMED**.

_____
RENÉE COHN JUBELIRER, President Judge